UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KRISTA C.,

                Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

                Defendant.

CASE NO. C19-5240-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1983.[1] She has a high school diploma and some college education, and has performed clerical work for a flooring company, provided customer service at a fast-food restaurant, and worked as a temporary laborer, and most recently provided childcare

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

SCHEDULING ORDER
PAGE - 1

for a friend on a regular basis for years. (AR 47-50, 347.)

Plaintiff applied for SSI and DIB in December 2014. (AR 306-20.) Those applications were denied and Plaintiff timely requested a hearing. (AR 193-207, 209-222.)

On August 23, 2016, and September 14, 2017, ALJ S. Andrew Grace held hearings, taking testimony from Plaintiff, vocational experts (VEs), a medical expert (ME), and a lay witness. (AR 38-101.) On February 2, 2018, the ALJ issued a decision finding Plaintiff not disabled. (AR 12-28.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on January 24, 2019 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had worked since the alleged onset date, but because the payment for this work was not documented in writing, it could not be determined whether it constituted substantial gainful employment. (AR 14-15.) The ALJ thus proceeded on with the sequential evaluation. (AR 15.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's right shoulder osteoarthritis, right shoulder sprain, mild scoliosis, mild cervical degenerative disc disease, mild degeneration of the SI joints, intermittent explosive disorder, major depressive disorder, post-traumatic stress disorder, personality disorder, and bipolar disorder. (AR 15-16.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ

found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 16-17.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work, with additional limitations: she can never climb ladders, ropes, or scaffolds. She can occasionally crawl. She cannot reach overhead with the dominant right upper extremity. She can frequently reach in all other directions with the dominant right upper extremity. She can occasionally push/pull with the dominant right upper extremity. She must avoid concentrated exposure to vibrations and hazards. She is limited to simple, routine, repetitive tasks consistent with unskilled work. (AR 17.) With that assessment, the ALJ found Plaintiff unable to perform past relevant work. (AR 26.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found Plaintiff capable of transitioning to other representative occupations, such as cashier II and small products assembler. (AR 27.) The ALJ further indicated that if Plaintiff were more limited than as found in the RFC assessment, in that she was limited to occasional reaching in all other (not only overhead) directions with her right arm, she could still perform the representative occupations of usher and call-out operator. (AR 27.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more

than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) discounting her subjective symptom testimony, (2) assessing certain medical evidence and opinions, and (3) discounting the lay evidence.[2] The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

## Subjective symptom testimony

The ALJ discounted Plaintiff's allegations because (1) her alleged physical limitations were inconsistent with the record, which showed conservative care, and inconsistent with her physical activities, including childcare for her son and other children, cooking, household chores, and driving a manual transmission; and (2) her alleged mental limitations were inconsistent with the record, which showed very limited treatment, lack of mental complaints reported to providers, and inconsistent activities, such as babysitting and socializing. (AR 19-22.) Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff first argues that the ALJ's assessment of her testimony was tainted by errors in the ALJ's assessment of the medical opinion evidence. Dkt. 10 at 13. As explained *infra*, however,

---

[2] Plaintiff's opening brief also challenges the ALJ's RFC assessment and step-five findings, but in doing so only reiterates arguments made elsewhere. Dkt. 10 at 18-19. Accordingly, these issues will not be analyzed separately.

SCHEDULING ORDER
PAGE - 4

the Court finds no error in the ALJ's assessment of the medical opinion evidence. To the extent that Plaintiff contends that the ALJ erred in considering whether her testimony was corroborated by the objective evidence (Dkt. 10 at 13), it may be true that such a lack of corroboration could not solely support the ALJ's discounting of her testimony, but the ALJ provided other reasons as well, and thus this argument fails to show error in the ALJ's decision.

Next, Plaintiff argues that the ALJ erred in discounting her testimony based on limited treatment for conditions she contends are disabling, as well as the fact that she failed to complain to providers about symptoms she now contends are disabling. Dkt. 10 at 13. Plaintiff suggests that her lack of treatment and/or complaints is attributable to her mental illness, but cites no evidence supporting that assertion. *Id.* Furthermore, this argument fails to explain why Plaintiff received only "sporadic" and "conservative" treatment for her shoulder complaints, as found by the ALJ. (*See* AR 19.) Thus, the Court finds that the ALJ did not err in discounting Plaintiff's allegations due to lack of treatment and lack of complaints for the symptoms she now claims are disabling. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"); *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006) ("Because Greger did not report any fatigue to his doctors during the relevant period, the ALJ properly limited the hypothetical to the medical assumptions supported by substantial evidence in the record.").

Plaintiff also argues that her socializing activities were "fairly limited" and thus did not meaningfully contradict her allegations of social limitations. Dkt. 10 at 13-14. The ALJ fairly characterized Plaintiff's social activities as including a friend she saw on a daily basis, a boyfriend she saw on weekends, and the three children she babysat on a regular basis during 2013-15. (AR

16-17.) These activities are reasonably inconsistent with Plaintiff's allegations of social limitations, such as her December 2014 statement that she used to be social, but now sits in her apartment alone, not wanting to be around others. (*See* AR 339.)

Lastly, Plaintiff argues that the ALJ erred in discounting her allegations based in part on her work activity as a babysitter for her friend's three children, because that activity does not contradict her allegations nor does it show that she can work full-time on a sustained basis. Dkt. 10 at 14. But on the contrary, Plaintiff testified that she worked as a babysitter from 2013-15 for three children for approximately ten hours at a time on a regular basis, and earning about $14,000 from this job in 2013 alone, and she also testified that she stopped babysitting when the parents of the children no longer needed childcare. (AR 47-50.) Because the income from this job was not documented in writing, the ALJ could not determine whether the work constituted substantial gainful activity (AR 14-15), but nonetheless, Plaintiff's ability to engage in this work activity during the adjudicated period contradicts her allegation of disability during that same time period. Because the ALJ identified inconsistencies between Plaintiff's allegations and her social and work activities, the ALJ did not err in relying on Plaintiff's activities when assessing the reliability of her testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

### Medical evidence

Plaintiff challenges the ALJ's assessment of a number of medical opinions, each of which the Court will address in turn.

Legal standards

In general, more weight should be given to the opinion of a treating doctor than to a non-

treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Social Security regulations since rescinded but applicable to this case distinguish between "acceptable medical sources" and "other sources": acceptable medical sources include, for example, licensed physicians and psychologists, while other providers, such as nurse practitioners, are considered "other sources." Social Security Ruling (SSR) 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Less weight may be assigned to the opinions of other sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, the ALJ's decision should reflect consideration of such opinions, and the ALJ may discount the evidence by providing reasons germane to each source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); SSR 06-03p.

James Parker, M.D.

Dr. Parker performed a psychiatric evaluation of Plaintiff in April 2013 and wrote a narrative report describing her symptoms and limitations. (AR 475-78.) Dr. Parker's medical source statement reads, in its entirety: "The claimant is capable of managing her own funds. She is not able to do simple repetitive tasks with accuracy and not able to sustain them. During the interview she seems quite angry and irritable. It is hard to see her interacting appropriately with coworkers, supervisors or the public." (AR 477-78.) The ALJ gave little weight to Dr. Parker's opinion, noting that it predates the alleged onset date, and finding it inconsistent with observations

SCHEDULING ORDER
PAGE - 7

of providers after the alleged onset date, specifically those noting Plaintiff's "bright affect." (AR 25.) The ALJ also noted that at the time of Dr. Parker's evaluation, Plaintiff was not taking any mental health medication or engaging in counseling, and that she engaged in "very minimal mental health treatment" even after Dr. Parker's evaluation. (*Id*.)

Plaintiff argues that the ALJ erred in discounting Dr. Parker's opinion based on the fact that it predates the alleged onset date, but this argument is not persuasive. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevance."). Furthermore, Plaintiff's lack of treatment for the conditions Dr. Parker diagnosed also undermines his conclusions. *See, e.g.*, *Blacksher v. Berryhill*, 762 Fed. Appx. 372, 374 (9th Cir. Feb. 26, 2019) (holding that the ALJ properly discounted a treating psychologist's opinion due to the claimant's "gaps in treatment"); *Evans v. Berryhill*, 759 Fed. Appx. 606, 608 (9th Cir. Jan. 7, 2019) (affirming an ALJ's rejection of a treating physician's opinion in part because plaintiff "received only sporadic treatment for his condition"). Accordingly, the Court finds no error in the ALJ's discounting of Dr. Parker's opinion.

Brandon Elrod, D.O.

Dr. Elrod examined Plaintiff in April 2013 and wrote a narrative report describing her symptoms and limitations. (AR 471-74.) His medical source statement reads, in relevant part:

> At this point, it is difficult to determine whether the patient actually has any pathology within the arm or shoulder. There was no mechanism of injury noted. At this point in time maximum standing and walking capacity should be no limitation. Maximum sitting capacity should be no limitation. The claimant does not need nor use an assistive device. Maximum lifting capacity is limited to 50 pounds occasionally and 25 pounds frequently. There is no limitation on postural activity. There is no limitation on handling, fingering, or feeling. The claimant should be limited on reaching with the right arm. It is likely that she may have an injury within the shoulder, but she needs an MRI. She should not lift with the right arm or reach above her head with her right arm at this time. There are no limitations on work place environment[al] activities.

(AR 474.) The ALJ noted that this opinion was rendered before the alleged onset date, and was inconsistent with evidence reflecting the alleged period of disability. (AR 23.) The ALJ also noted that Dr. Elrod's opinion was predicated on the concern that Plaintiff may have an injury and needed an MRI (which was never obtained), and thus his lifting/reaching restrictions on the right were intended to be temporary until the MRI could be performed. (AR 23.)

Plaintiff characterizes the ALJ's reasoning as "speculative" and notes that "more recent evidence confirmed the severity of [Plaintiff's] chronic shoulder arthritis." Dkt. 10 at 4. But Dr. Elrod was concerned about an injury, not joint disease, and Plaintiff has not shown that the ALJ was incorrect in stating that the record does not demonstrate any acute injury. Furthermore, the ALJ also reasonably found that Dr. Elrod's opinion was entitled to less weight because it predated the alleged onset date and was inconsistent with later evidence, and Plaintiff has not shown how this reasoning is invalid. *See Carmickle*, 533 F.3d at 1165.

Nancy Armstrong, ARNP

Ms. Armstrong, a treating nurse, completed a form opinion regarding Plaintiff's ability to work in July 2014. (AR 497-501.) She listed Plaintiff's diagnoses as "psoriatic arthritis of [right] shoulder [with] degenerative joint disease" and opined that Plaintiff was unable to work because she "has really no use of [right] arm." (AR 497.) She described Plaintiff as "severely limited," in that she could not lift 2 pounds or was unable to stand/walk. (AR 498.) She indicated that these limitations would be in place for six months, because Plaintiff "[n]eeds specialist treatment and probable surgery." (*Id.*) The ALJ gave "partial weight" to Ms. Armstrong's opinion because the "extreme limitations" she indicated were

> not supported by the treating record, the exam findings or the imaging. The orthopedic doctors noted early degeneration in the right shoulder. Further, [Ms. Armstrong] is not an acceptable medical source and other medical sources have opined that the claimant is not as limited. The record also demonstrates activities

that are inconsistent with the extent of limitations reported by ARNP Armstrong. (AR 23.) The ALJ also stated that the record "does not include a diagnosis of psoriatic arthritis from an acceptable medical source nor does it show a rheumatology consult." (*Id*.)

Plaintiff argues that the record does indeed contain a diagnosis of psoriatic arthritis made by an acceptable medical source. Dkt. 10 at 5 (citing AR 672, 677). The records Plaintiff cites reveal that an acceptable medical source listed psoriatic arthritis as a diagnosis as a result of her self-reporting that she had that condition, but there is no evidence in the record of any testing performed to confirm that diagnosis. (AR 676 ("Claims Psoriatic Arthritis").) Moreover, as the ALJ noted, a shoulder/elbow specialist referred to Plaintiff's shoulder condition as "mild" and "early" (AR 493), and this reasonably undermines Ms. Armstrong's opinion that her shoulder condition caused such severe restrictions. During the time of Ms. Armstrong's opinion, Plaintiff was working as a babysitter for three children (AR 47-50), in addition to caring for her own child, and this work is inconsistent with Ms. Armstrong's opinion that Plaintiff could not work, could not lift 2 pounds or could not stand/walk. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity). These are germane reasons to discount Ms. Armstrong's opinion.

<u>Tasmyn Bowes, Psy.D.</u>

Dr. Bowes performed a DSHS evaluation in September 2014 and completed a form opinion describing Plaintiff's symptoms and limitations. (AR 523-35.) The ALJ summarized the marked limitations described by Dr. Bowes, and found those to be unsupported by medical records, and inconsistent with her lack of mental health treatment and her ability to care for her son or complete her other activities, such as babysitting and household chores. (AR 24-25.)

Plaintiff contends that the ALJ's reasoning is invalid because Dr. Bowes's opinion was

corroborated by two other opinions, but the ALJ reasonably discounted both of those opinions, as discussed *supra* and *infra*. Dkt. 10 at 6. Moreover, as discussed *supra*, an ALJ is entitled to discount a medical opinion describing limitations caused by a condition for which the claimant received little or sporadic treatment. *See, e.g.*, *Blacksher*, 762 Fed. Appx. at 374; *Evans*, 759 Fed. Appx. at 608. Lastly, Dr. Bowes's opinion is, as the ALJ found, inconsistent with Plaintiff's ability to work as a babysitter and care for her son; Plaintiff did not report her work activity to Dr. Bowes. Plaintiff has not shown that the ALJ erred in discounting Dr. Bowes's opinion for these reasons.

<u>Loreli Thompson, Ph.D.</u>

Dr. Thompson examined Plaintiff in July 2015 and wrote a narrative report describing her symptoms and limitations. (AR 612-19.) Dr. Thompson opined that Plaintiff had a good ability to reason and good understanding, but "inconsistent" memory functions and sustained concentration and persistence. (AR 617.) Dr. Thompson described Plaintiff's social functioning as "fair," and suggested that she would have impact to her ability to adapt to routine changes in a typical work setting based on her reports of depressed mood, variable mood, increased anxiety, low frustration tolerance, problems with concentration/attention, and physical limitations. (*Id*.)

The ALJ gave partial weight to Dr. Thompson's opinion, noting that Dr. Thompson "did not address specific workplace tasks and did not use vocational language in her assessment of the claimant[,]" and thus did not specifically opine as to whether Plaintiff was able to work. (AR 25.) The ALJ found that to the extent Dr. Thompson's "vague" statements could be construed as limitations that conflict with the RFC assessment, those limitations would be inconsistent with the record and with Plaintiff's lack of mental health treatment, as well as inconsistent with Plaintiff's ability to care for her child as well as work as a babysitter 2013-15. (*Id.*)

Plaintiff disputes the ALJ's interpretation, stating that Dr. Thompson did in fact refer to

SCHEDULING ORDER
PAGE - 11

workplace tasks and use vocational language. Dkt. 10 at 7. Plaintiff provides no examples, and the Court's review of Dr. Thompson's opinion is consistent with the ALJ's interpretation. Dr. Thompson did not address, for example, Plaintiff's ability to interact with co-workers or supervisors, maintain work attendance, or make workplace decisions. (*See* AR 617.) Furthermore, as discussed above, an ALJ is entitled to discount a medical opinion describing limitations caused by a condition for which the claimant received little or sporadic treatment, and the limitations described by Dr. Thompson are arguably inconsistent with Plaintiff's ability to work as a babysitter. Plaintiff did not report her work as a babysitter to Dr. Thompson. (*See* AR 613.) Accordingly, the Court finds that the ALJ provided legally sufficient reasons to discount Dr. Thompson's opinion.

Gary Gaffield, D.O.

Dr. Gaffield examined Plaintiff in December 2016 and wrote a narrative report describing her symptoms and limitations. (AR 772-78.) Dr. Gaffield opined that *inter alia* Plaintiff could not "reach or work overhead with her right upper extremity due to the weakness and limited motion." (AR 777.)

The ALJ credited much of Dr. Gaffield's opinion, but discounted his opinion that Plaintiff could not reach overhead on the right, because Dr. Gaffield's own opinion report mentions activities that require bilateral arm use (such as driving, using the computer, household chores, grooming, and caring for her child). (AR 23.) The ALJ also noted that Plaintiff had minimal, conservative treatment for her shoulder condition. (*Id*.) Lastly, the ALJ emphasized that the ME considered the entire record and found that Plaintiff was limited to reaching on the right side overhead occasionally and in all other directions frequently. (*Id*.)

Plaintiff's opening brief provides only a conclusory challenge to this part of the ALJ's

reasoning, arguing that "the ALJ erred by failing to state any legitimate reason for rejecting his opinion about [Plaintiff's] manipulative limitations." Dkt. 10 at 8. This contention is not accompanied by any analysis of the ALJ's stated reasons for discounting Dr. Gaffield's opinion, and thus Plaintiff failed to meet her burden to show error in the ALJ's decision.

"Other medical evidence"

Plaintiff devotes pages of her opening brief to a summary of miscellaneous medical findings, without connecting them to a particular assignment of error. Dkt. 10 at 8-11. These untethered clinical findings present no legal issue for the Court's analysis and need not be discussed further.

State agency opinions

Plaintiff argues that the ALJ erred in failing to credit the State agency consultants' opinion that Plaintiff was limited to occasional reaching in any direction and occasional handling with her right arm, and that she was limited to superficial non-cooperative communication with co-workers, but should work away from the general public. (*See* AR 136, 150, 180, 182.) The ALJ indicated that he discounted the State agency physical opinions in light of the ME's testimony, which was rendered after a review of the entire record, some of which was unavailable to the State agency consultants. (AR 24.) The ALJ found the State agency psychological opinions to be inconsistent with (1) Plaintiff's abilities as demonstrated upon mental status examination; (2) Plaintiff's lack of mental health treatment; (3) providers' observation of Plaintiff's "bright affect" during appointments; and (4) Plaintiff's activities, specifically babysitting. (*Id*.)

Once again, Plaintiff's opening brief provides no analysis of the reasons provided by the ALJ for discounting the State agency opinions. Dkt. 10 at 11-12. The Court finds that Plaintiff has not met her burden to show error in the ALJ's decision.

ME

An ME testified at the second administrative hearing in this case, opining that *inter alia* Plaintiff could frequently reach with her right arm. (AR 76-83.) The ALJ gave significant weight to this opinion, noting that the ME had the opportunity to review the entire record, "including the most recent imaging of the right shoulder done in June of 2016." (AR 22.) The ALJ also found that the ME "is an expert in the field and provided a very detailed explanation to support his opinions." (*Id.*)

Plaintiff suggests that the ALJ erred in crediting the ME's testimony because the ME did not examine Plaintiff nor consider her subjective allegations, and did not adequately explain why he disagreed with Drs. Elrod and Gaffield, or explain how his opinion was consistent with the clinical findings in the record. Dkt. 10 at 12. This reasoning does not establish error in the ALJ's assessment of the ME's testimony, because Plaintiff has not shown that the ME's testimony was inconsistent with all the other evidence in the record. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (holding that "the report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in the record'" (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original))).

Because Plaintiff has not established error in the ALJ's assessment of the medical opinion evidence, the Court affirms this portion of the ALJ's decision.

Lay statement

Plaintiff challenges the ALJ's assessment of statements written by Plaintiff's mother, Raven Hanks, and the hearing testimony of Plaintiff's friend, Ashley Erickson. (AR 97-99, 332-33, 356-63.) The ALJ summarized all of the statements and found that the limitations Ms. Hanks and Ms. Erickson described were not supported by the medical record. (AR 25-26.)

Although an ALJ must provide germane reasons to discount lay statements, the Ninth Circuit has held that lack of corroboration in the medical record is not a germane reason to discount a lay statement, because an ALJ should consider lay evidence in order to obtain a different perspective on a claimant's functioning. *See Diedrich v. Berryhill*, 874 F.3d 634, 640-41 (9th Cir. 2017). The ALJ's erroneous reasoning in this case is harmless, however, because the lay witnesses' statements were similar to Plaintiff's testimony, and thus the ALJ's valid reasons to discount Plaintiff's allegations apply with equal force to the lay statements. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony"). Thus, the ALJ's assessment of the lay evidence does not provide a basis for reversing the decision.

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this 29th day of January, 2020.

Mary Alice Theiler
United States Magistrate Judge